FILED
JUN 0 3 2002 CCM

LARRY W. PROPES, CLERK
CHARLESTON, SC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Case No. 2 02 1915-18

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | |
| ) | |
| COUNTY OF CHARLESTON ) | |
| ) | |
| DAVID D. BENNETT, ) | |
| ) | |
| PLAINTIFF, ) | **PETITION FOR REMOVAL** |
| ) | |
| vs. ) | |
| ) | |
| BIO-REFERENCE LABORATORIES, ) | |
| INC., ) | |
| ) | |
| DEFENDANT. ) | |
| _____) | |

**TO: NANCY BLOODGOOD, YOUNG, CLEMENT, RIVERS & TISDALE, LLP, ATTORNEYS FOR THE PLAINTIFF:**

The Petitioner, Bio-Reference Laboratories, Inc., without waiving its contention that there is no personal jurisdiction over Petitioner, would respectfully show unto this Court:

1. The Petitioner is the Defendant in the above-captioned case, which is pending in the Charleston County South Carolina Court of Common Pleas under Case Number 02-CP-10-1781. Copies of the Summons and Complaint in that action are attached hereto and constitute all process, pleadings and orders served upon the Defendant in that action to date.

2. The attached Summons and Complaint were served on the Defendant on or about May 6, 2002.

3. The time in which the Defendant must file this Petition for Removal has not elapsed.

1

4.   The Plaintiff in this action is a resident of Charleston County, South Carolina, and the Defendant is a corporation organized and existing under the laws of a state other than South Carolina, and therefore diversity applies.

5.   Defendant is informed and believes that this case is removable to Federal Court pursuant to 28 U.S.C §1441(b), and that more than $75,000 is in controversy as the Complaint seeks unspecified and unlimited actual damages, prays that said actual damages be trebled, and also seeks unspecified and unlimited punitive damages.

WHEREFORE, Petitioner, Bio-Reference Laboratories, Inc., without waiving its contention that there is no personal jurisdiction over the Petitioner, prays this case be removed to the United States District Court for the District of South Carolina, Charleston Division, pursuant to 28 U.S.C §1441(b), and according to the statutes in such cases provided.

HAYNSWORTH SINKLER BOYD, P.A.
160 East Bay Street
Post Office Box 340
Charleston, SC  29402
Telephone:  (843) 722-3366
Facsimile:  (843) 722-2266

By: _____
Thomas S. White (Federal I.D. No. 6510)

ATTORNEYS FOR DEFENDANT

Charleston, South Carolina

June 3, 2002.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Case No. _____

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | |
| ) | |
| COUNTY OF CHARLESTON ) | |
| ) | |
| DAVID D. BENNETT, ) | |
| ) | |
| PLAINTIFF, ) | **CERTIFICATE OF SERVICE** |
| ) | |
| vs. ) | |
| ) | |
| BIO-REFERENCE LABORATORIES, ) | |
| INC., ) | |
| ) | |
| DEFENDANT. ) | |
| _____ ) | |

I, Gwenn L. Jalbert, a paralegal with Haynsworth Sinkler Boyd, P.A., hereby certifies that I have on this _3rd_ day of _June_, 2002, served a true and correct copy of the above and foregoing *PETITION FOR REMOVAL*, via United States Mail with sufficient first class postage affixed thereto upon the following counsel for the Plaintiff:

 Nancy Bloodgood
 YOUNG, CLEMENT, RIVERS & TISDALE, LLP
 28 Broad Street
 Post Office Box 993
 Charleston, SC 29402
 ATTORNEYS FOR PLAINTIFF

          HAYNSWORTH SINKLER BOYD, P.A.
          160 East Bay Street
          Post Office Box 340
          Charleston, SC 29402
          Telephone: (843) 722-3366
          Facsimile: (843) 722-2266

       By: _/s/ Gwenn L. Jalbert_____
          Gwenn L. Jalbert

01-CP-10-1781

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
) 
COUNTY OF Charleston ) NINTH JUDICIAL CIRCUIT
)
David D. Bennett, ) CASE NO.
)
      Plaintiff(s), )
)
vs. )
)
Bio-Reference Laboratories, Inc., )
)
      Defendant(s). )

FILED 2002 APR 22 AM 7:10

The cover sheet and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this Cover Sheet must be served on the defendant(s) along with the Summons and Complaint.

NATURE OF ACTION: *(Check one category for the main cause of action)*

- [ ] TORT - Motor Vehicle
- [ ] TORT - Professional Malpractice
- [x] TORT - Unfair Trade Practices and Other Economic or Business-Related Wrongs
- [ ] TORT - Products Liability
- [ ] TORT - General or Other
- [ ] PCR
- [ ] GOV/ADM - Workers' Compensation
- [ ] GOV/ADM - General or Other

- [ ] CONTRACT - Debt Collection
- [ ] CONTRACT - Employment
- [ ] CONTRACT - Construction
- [ ] CONTRACT - Wrongful Breach
- [ ] CONTRACT - General or Other
- [ ] REAL PROPERTY
- [ ] MINOR SETTLEMENTS
- [ ] DOMESTICATE FOREIGN JUDGMENT
- [ ] OTHER *(Please Describe)*

JURY DEMAND: [x] YES  [ ] NO
NOTE: Information requested on this form is preliminary in nature, and for administrative purposes only. The response to this request for information on jury demand merely indicates a likelihood that a jury trial will or will not be requested and does NOT constitute a demand for or a waiver of trial by jury pursuant to applicable rules or statutes.

DOCKETING INFORMATION *(Check one box).*

- [ ] This case is subject to arbitration (all cases with monetary damages less than $25,000 are subject to arbitration, unless otherwise exempt).
- [x] This case is subject to mediation (all cases not subject to arbitration must be mediated, unless otherwise exempt)
- [ ] This case is exempt from ADR, and certificate is attached.

YOUNG, CLEMENT, RIVERS & TISDALE, LLP

By: *Nancy Bloodgood*
Nancy Bloodgood
28 Broad Street, P. O. Box 993
Charleston, SC 29402
(843) 724-6659 – Telephone
(843) 579-1352 - Fax
Attorneys for Plaintiff

Dated: 4/22/02

SEE REVERSE SIDE FOR FURTHER IMPORTANT INFORMATION                SCRCCA APP C-1

02-CP-10-1781

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON |
| COUNTY OF CHARLESTON ) | NINTH JUDICIAL CIRCUIT |
| DAVID D. BENNETT, ) | CASE NO. _____ |
| PLAINTIFF, ) | |
| vs. ) | SUMMONS |
| BIO-REFERENCE LABORATORIES, INC., ) | |
| DEFENDANT. ) | |

FILED 2002 APR 22 AM 7:10

TO: THE DEFENDANT BIO-REFERENCE LABORATORIES, INC., ABOVE NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to the said Complaint on the subscribers at their offices, 28 Broad Street, Charleston, South Carolina, within thirty (30) days after the service hereof, exclusive of the day of such service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

YOUNG, CLEMENT, RIVERS & TISDALE, LLP

By: _____
Nancy Bloodgood
P.O. Box 993, Charleston, SC 29402
(843) 724-6659 - Telephone
(843) 579-1352 - Fax
E-mail: nb@ycrt.com
Attorneys for the Plaintiff

Charleston, South Carolina

Dated: 4/22/02

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON |
| ) | |
| COUNTY OF CHARLESTON ) | NINTH JUDICIAL CIRCUIT |
| ) | CASE NO. 02-CP-10-1781 |
| DAVID D. BENNETT, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | COMPLAINT |
| vs. ) | (Jury Trial Demanded) |
| ) | |
| BIO-REFERENCE LABORATORIES, ) | |
| INC., ) | |
| ) | |
| DEFENDANT. ) | |

The Plaintiff, David D. Bennett, complaining of the above-named Defendant Bio-Reference Laboratories, Inc. alleges as follows:

1. Plaintiff David D. Bennett is a resident and citizen of the County of Charleston, State of South Carolina.

2. Defendant Bio-Reference Laboratories, Inc. (hereinafter referred to as "Defendant Corporation") is a corporation organized and existing under the laws of the State of New Jersey which transacted business in Charleston County, South Carolina while Plaintiff was employed with Defendant Corporation.

3. Defendant Corporation is not currently registered to conduct business in South Carolina but nevertheless has intentionally availed itself of the privilege of doing business in, and of the protection of the laws of, the State of South Carolina.

4. This Court has personal jurisdiction over the parties named herein and subject matter jurisdiction of this controversy.

## GENERAL ALLEGATIONS

5. Plaintiff was employed with Defendant Corporation from 1996 until 2001, and was Vice President for Strategic Development from December of 1999 until his termination on January 10, 2001.

6. Plaintiff's employment with Defendant Corporation was pursuant to a contract of employment most recently entered into on January 5, 1999 and ending in January of 2003. (Contract attached hereto as Exhibit 1)

7. Plaintiff's annual salary as per this contract of employment was $140,000 per year.

8. Beginning in the spring of 1999, Defendant Corporation repeatedly demanded that Plaintiff purchase shares of Defendant Corporation's publicly traded stock to artificially bolster the stock's price and avoid it from being delisted.

9. Plaintiff refused to buy back Defendant Corporation's stock and Defendant Corporation's Chief Executive Officer, Dr. Marc Grodman, thereafter accused Plaintiff of being disloyal to the company and constantly reminded Plaintiff of this alleged disloyalty through the Fall of 2000.

10. Beginning in the Fall of 2000, Defendant Corporation also began repeatedly demanding that Plaintiff invest funds in a failing company called Right Body Foods.

11. Defendant Corporation knew by September of 2000 that material misrepresentations had been made to it concerning the profitability of Right Body Foods and that Right Body Foods was operating at a loss.

2

12. Plaintiff permanently moved from Virginia to Charleston, South Carolina between August and September of 2000 and continued to work as he had previously done for Bio-Reference in the capacity of Vice President for Strategic Development.

13. On or about November 26, 2000, Defendant Corporation stopped paying Plaintiff his biweekly salary.

14. On December 6, 2000, Plaintiff informed Defendant Corporation in writing that he refused to invest any of his personal funds in Right Body Foods.

15. Plaintiff continued to perform work assignments for Defendant Bio-Reference until such time as he received a termination letter dated January 10, 2001.

## FOR A FIRST CAUSE OF ACTION
(Violation of § 41-10-10 et seq. of the Code of Laws of South Carolina)

16. Plaintiff repeats the foregoing allegations of this Complaint as fully and completely as if repeated herein verbatim.

17. The employment relationship between Plaintiff and Defendant Corporation ended on January 10, 2001.

18. More than 48 hours in the next pay period has expired since the end of the employment relationship between Plaintiff and Defendant Corporation has recklessly, willfully and wantonly failed to pay the Plaintiff all remaining wages owed to the Plaintiff.

19. As a direct and proximate cause of Defendant Corporation's reckless, willful and wanton conduct, Plaintiff has been injured and suffered damages.

20. Defendant Corporation's failure to pay the Plaintiff all wages due and owing to him is a violation of § 41-10-10 et seq. of the Code of Laws of South Carolina, and Plaintiff is informed and believes he is entitled to recover damages including,

3

but not limited to, an award of punitive and/or treble damages, plus costs and reasonable attorney's fees.

### FOR A SECOND CAUSE OF ACTION
### (Violation of Public Policy)

21. Plaintiff repeats the foregoing allegations of this Complaint as fully and completely as if repeated herein verbatim.

22. During the course of Plaintiff's employment, Defendant Corporation required Plaintiff, as a condition of his employment, to purchase company stock in order to artificially inflate its value. Such action is specifically prohibited by South Carolina Code § 35-1-1210.

23. During the course of Plaintiff's employment, Defendant Corporation required Plaintiff, as a condition of his employment, to pay his personal funds in the amount of $250,000.00 to Defendant Corporation in order to save a failing company called Right Body Foods. Such action is specifically prohibited by South Carolina Code § 41-7-30.

24. Defendant Corporation wrongfully terminated Plaintiff's employment when he refused to violate South Carolina Code § 35-1-1210 and South Carolina Code § 41-7-30 in contravention of well-established public policy in this State.

25. As a direct and proximate result of Defendant Corporation's action, Plaintiff has suffered damages and is informed and believes he is entitled to recover damages including, but not limited to, lost back and future wages, punitive damages, lost stock options, emotional distress and pre and post judgment interest.

4

## FOR A THIRD CAUSE OF ACTION
### (Breach of Employment Contract)

26. Plaintiff reasserts the foregoing paragraphs of this Complaint as fully and completely as if repeated herein verbatim.

27. On January 5, 1999, Defendant Corporation entered into an employment contract with Plaintiff for a period of four years. (Exhibit 1)

28. The terms of this Employment Contract state that Plaintiff can only be terminated for "cause" during that four-year period.

29. The employment contract defines "cause" as "gross neglect or misconduct causing detriment to Bio-Reference, conviction of a crime, preparing and/or filing misleading documents and any other reasons which may be recognized by law as 'constituting cause'." (Paragraph 15 of the Employment Contract, Exhibit 1)

30. An employee's refusal to invest in a failing company owned by Defendant Corporation is not included in the definition of "cause" in Paragraph 15 of the Employment Contract.

31. An employee's refusal to buy back the Defendant Corporation's stock to bolster its price and protect the stock from being delisted is not included in the definition of "cause" in Paragraph 15 of the Employment Contract.

32. The reason given by Defendant Corporation for Plaintiff's termination was that he allegedly failed to contact the company and perform his duties. This reason is pretext as Plaintiff continued to work up until the day he received a termination letter in January of 2001.

33. Plaintiff fully complied with the provisions of the Employment Contract; he faithfully and loyally performed all of his assigned duties; he complied with

5

Defendant Corporation's policies, rules and procedures; and his conduct was beneficial to Defendant Corporation.

34. Defendant Corporation breached its Employment Contract with Plaintiff by terminating him prior to the expiration of the Employment Contract without "cause."

35. The reason for Plaintiff's termination by Defendant Corporation was to retaliate against Plaintiff for refusing to violate South Carolina Code § 35-1-1210 and § 41-7-30.

36. Plaintiff has incurred substantial damages as a direct and proximate result of Defendant Corporation's breach, and is informed and believes he is entitled to recover consequential damages in the form of lost stock options and back and front pay owed to Plaintiff under the terms of the employment contract until its expiration in 2003, as well as pre and post judgment interest.

### FOR A FOURTH CAUSE OF ACTION
(Breach of Contract Accompanied by Fraudulent Act)

37. Plaintiff reasserts the foregoing paragraphs of this Complaint as fully and completely as if repeated herein verbatim.

38. Defendant Corporation's breach of Plaintiff's employment contract as previously alleged was accompanied by fraudulent and illegal acts contemporaneous with its breach, including, but not limited to, Defendant Corporation's demand that Plaintiff purchase Defendant Corporation's publicly traded company stock to bolster the stock's value and to avoid the stock being delisted; Defendant Corporation's accusation that Plaintiff was disloyal to the Company as late as November of 2000 for refusing to buy back Defendant Corporation's stock; and

Defendant Corporation's attempt to require Plaintiff as a condition of his employment to invest $250,000.00 of his personal funds in a company that Defendant Corporation knew at the time was losing money and whose profitability had been misrepresented to Defendant Corporation.

39. Defendant Corporation had fraudulent intent relating to its breach of the Employment Contract as evidenced by the circumstances surrounding the breach.

40. Defendant Corporation threatened Plaintiff and told Plaintiff he would no longer have a job if he did not invest his personal funds in Right Body Foods.

41. Plaintiff is informed and believes that Defendant Corporation's actions were willful, wanton, reckless, malicious, intentional and done with a conscious disregard for the rights of the Plaintiff.

42. As a direct and proximate result of Defendant Corporation's actions, Plaintiff is informed and believes he has suffered damages, and is entitled to an award of damages including, but not limited to, actual, consequential and special damages, including back and front pay, lost stock options, pre and post judgment interest and punitive damages in an amount to be determined at trial.

### FOR A FIFTH CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

43. Plaintiff reasserts the foregoing paragraphs of this Complaint as fully and completely as if repeated herein verbatim.

44. An implied covenant of good faith and fair dealing arose from the Employment Contract entered into between Plaintiff and Defendant Corporation.

45. Defendant Corporation breached the covenant of good faith and fair dealing by retaliating against Plaintiff and wrongfully terminating him when Plaintiff refused

7

to violate state law, refused to purchase Defendant Corporation's stock and refused to invest his personal funds in a company that Defendant Corporation knew was not profitable.

46. As a direct and proximate result of Defendant Corporation's breaches as set forth above, Plaintiff has suffered damages in the form of lost back and future wages, lost benefits and stock options, emotional distress and pre and post judgment interest.

47. Defendant Corporation's actions, as set forth above, were taken intentionally, willfully and wantonly, with reckless disregard for Plaintiff's rights and, therefore, Plaintiff is also entitled to such punitive damages as may be awarded by the Court.

WHEREFORE, Plaintiff prays for judgment against Defendant Corporation as follows:

a) for actual and punitive damages in an amount equal to three times the losses Plaintiff sustained which were caused by Defendant Corporation's breach of the South Carolina Payment of Wages Act, plus costs and reasonable attorney's fees;

b) for actual and punitive damages for Plaintiff's public policy claim;

c) for actual damages in an amount equal to the losses sustained by Plaintiff caused by Defendant Corporation's breach of contract including, but no limited to, back and front pay, as well as the value of lost stock options and pre and post judgment interest;

d) for actual and punitive damages as to Plaintiff's breach of contract accompanied by fraudulent act claim;

e)     for actual and punitive damages for Plaintiff's breach of covenant of good faith and fair dealing claim;

f)     for costs and disbursements of this action;

g)     for trial by jury;

h)     for attorney's fees; and,

i)     for such other and further relief as the Court may deem just and proper.

YOUNG, CLEMENT, RIVERS & TISDALE, LLP

By: *Nancy Bloodgood*
Nancy Bloodgood
P.O. Box 993, Charleston, SC 29402
(843) 724-6659 - Telephone
(843) 579-1352 - Fax
E-mail: nb@ycrt.com
Attorneys for the Plaintiff

Charleston, South Carolina

Dated: 4/22/02

# BIO-REFERENCE LABORATORIES, Inc.

January 5, 1999

Mr. David D. Bennett
3 Sarasota Drive
Stafford, Virginia 22554

Dear David:

We are pleased that you have decided to withdraw your letter of resignation and continue your employment with Bio-Reference. This letter is intended to confirm the terms and conditions of your continued employment.

1. Your title will be Vice President for Strategic Development. You agree to perform the duties and responsibilities as assigned to you from time to time by Bio-Reference. At the outset, the general nature of your responsibilities will be to promote program development and marketing in all areas of laboratory operations with an emphasis on drug testing and laboratory services provided to institutions, such as prisons and corporations. In addition, you will work with senior management to develop programs in medical management for both self insured funds and corporations with regard to services such as prescription benefit management, medical claims processing and management and disease management programs. We will continue to monitor and evaluate your work and, if appropriate, revise your responsibilities so that your talents and expertise can be best utilized. You will devote your full time and energy to the business of Bio-Reference during normal business hours.

2. Your salary will be $140,000 per year. In addition, on an annual basis Bio-Reference will evaluate your performance and, if the company in its sole discretion feels that a bonus is warranted, you will be awarded a bonus.

3. As an additional incentive to join Bio-Reference, we will grant you non-transferable employee stock options to purchase an aggregate 100,000 shares of the Company's Common Stock at an exercise price of $1.00 per share, exercisable (except in the event of death while so employed) only during the period that you are employed by the Company or subsidiaries. The options are exercisable immediately. Options to purchase up to 25,000 shares shall be exercisable by you during calendar year 2000; options to purchase 50,000 shares (including shares issued pursuant to option exercises in calendar year 2000) shall be excisable by you during calendar year 2001; and any remaining unexercised options shall be exercisable by thereafter until December 31, 2004. In the event that you die while employed by the Company or a subsidiary, any options exercisable by you on the date of your death may be exercised by your estate within one year thereafter. In the event that your employment is terminated, all unexercised options shall terminate within two business days thereafter unless such employment is terminated "for cause" in which event all unexercised options shall terminate on the date of such termination of employment.

481 Edward Ross Drive, Elmwood Park, NJ 07407 • 201-791-2600 • 1-800-229-LABS • FAX: 201-791-1941

4. The term of you employment by Bio-Reference will be for a period of four (4) years from the date of this letter agreement. Your employment will automatically renew for successive periods of one (1) year each unless either party gives sixty (60) days written notice prior to the expiration of the then current term of its intention to terminate the agreement at the end of the current term. Bio-Reference, as a condition of any renewal term, may designate new terms and conditions. If the new terms and conditions are not acceptable to you, the agreement shall not be renewed.

5. Bio-Reference may terminate your employment at any time, without prior notice, for cause. In the event your employment is terminated by Bio-Reference for cause, Bio-Reference's sole obligation shall be to pay you, when due, any amount earned by you in accordance with the provisions of this agreement up to the date of termination less any amount due Bio-Reference. For purposes of this agreement "cause" shall mean the gross neglect or misconduct causing detriment to Bio-Reference, conviction of a crime, preparing and/or filing false or misleading documents, and any other reasons which may be recognized by law as constituting "cause". If your employment is terminated for cause, the Bio-Reference shall have no further obligation to you, except that the you shall be entitled to COBRA benefits or any other benefits required to be provided by law.

6. You will be reimbursed for normal business related expenses such as travel, food, lodging, communication, and entertainment. Such expenses must be reasonable and approved by Bio-Reference. Reimbursement will be upon submission of an expense report covering actual expenses with receipts. Expense reports must be submitted to Bio-Reference within two weeks after the expense has been incurred. Bio-Reference's decision as to the appropriateness and reasonableness of any business related expense shall be final.

7. You will be provided with a leased car of your choice (monthly rental charge not to exceed $775). Bio-Reference will pay for gasoline, maintenance and basic insurance coverage. If you desire insurance coverage above the basic coverage provided by Bio-Reference you may do so at your own cost.

8. You will be entitled to receive benefits now or hereafter provided by Bio-Reference to full time employees in positions comparable to yours in accordance with the provisions of any such programs.

9. During the course of your employment you may receive certain materials from Bio-Reference including, without limitation, records, customer accounts, customer lists, drawings, plans, specifications, literature, pricing information and sales aids. These materials shall remain the sole and exclusive property of Bio-Reference. If your employment is terminated, you will immediately return these materials to Bio-Reference.

10. You will treat as confidential and not disclose or use for the benefit of any person or entity other than Bio-Reference any confidential or proprietary information made available to you as a result of or related to your employment by Bio-Reference or related to the business of Bio-Reference.

11. You represent and warrant to Bio-Reference that there is no contract or agreement between you and any person, corporation, partnership or other entity or any impediment of any kind which prohibits and/or restricts you from entering into this agreement or performing the services as provided for in this agreement. You also represent and warrant to Bio-Reference that you have the full right and authority to enter into this agreement.

12. For a period of six (6) months after the termination of your employment, for whatever reason, you will not directly or indirectly, for yourself or as an employee or agent of any other person or entity, contact or solicit business from any customer of Bio-Reference or any person or entity that you had contact with and/or were introduced to during the course of your employment by Bio-Reference respecting the sale of products and/or services similar to the products and/or services sold or provided by Bio-Reference.

13. If, during the six (6) month period following the termination of your Bio-Reference employment, you have the opportunity to work, directly or indirectly, for an entity that competes with Bio-Reference's business in the Virginia/Maryland/Washington, D.C. area ("competing entity"), you will advise Bio-Reference of the offer in writing ("Notice of Offer"). Bio-Reference shall have the right to prohibit you from working for the competing entity for a period of up to six (6) months from the date of receipt of the Notice of Offer. If Bio-Reference makes this election, it shall notify you in writing within five (5) business days from receipt of the Notice of Offer. The notice from Bio-Reference shall state the number of months covered by the prohibition (up to the permitted six (6) month maximum period). For each month that you are prohibited from working for the competing entity, Bio-Reference agrees to pay you an amount equal to your average monthly compensation (salary and commission) for the three (3) month period prior to the termination of your Bio-Reference employment. During the period covered by the prohibition, you agree not to directly or indirectly work for the competing entity. During the period of time that you are receiving payments from Bio-Reference under this provision, you will not be considered an employee of Bio-Reference. If Bio-Reference does not elect to prohibit you from working for the competing entity, you shall be entitled to work for the competing entity but you will still be bound by the confidentiality and non-solicitation provisions of this agreement.

14. You acknowledge that Bio-Reference will suffer irreparable harm in the event of an actual or threatened breach of the provisions of this agreement that deal with confidentiality, non-solicitation and/or prohibitions on employment. Therefore, Bio-Reference shall be entitled to equitable relief, including an injunction, against any breach or threatened breach of these provisions.

15. This agreement sets forth the entire agreement and understanding between and supersedes all prior agreements, oral or written, and all other communications between us and may be amended only by a writing executed by both of us. This agreement shall be interpreted in accordance with the laws of the State of New Jersey. If any provision of this agreement is determined to be invalid or unenforceable under present or future laws, such invalidity or unenforceability will not invalidate or render unenforceable the remainder of this agreement, but rather the entire agreement will be construed as if not containing the particular invalid or unenforceable provision and our respective rights and obligations shall be construed and enforced

unenforceable provision and our respective rights and obligations shall be construed and enforced accordingly.

16. Any dispute or controversy related to this agreement shall be submitted to JAMS/Endispute ("JAMS") for binding arbitration by the complaining party providing written notice to JAMS and the other party. The arbitration shall take place in a location mutually agreed upon by us or, if we cannot agree upon a location, in a location in Bergen or Union County selected by the arbitrator. We will try to agree on a retired judge from the JAMS panel for the binding arbitration. If we are unable to agree, JAMS will provide a list of three available judges and we can each strike one. The remaining judge will serve as the arbitrator. Judgment on the decision of the arbitrator may be entered in the highest court of any forum, federal or state, having jurisdiction. The arbitrator shall set the guidelines for discovery. Nothing contained herein shall prevent either of us from applying to a court having jurisdiction for emergent equitable relief. The cost for JAMS shall initially be shared equally between us, with the prevailing party being entitled to recover its share of said cost and reasonable attorneys' fees and expenses from the other party.

If these terms are agreeable, please sign a copy of this letter in the space provided below and return a signed copy to me.

David, we look forward to continuing our working relationship and trust that it will be a mutually rewarding relationship.

Sincerely,

Bio-Reference Laboratories, Inc.

By: _____
Marc Grodman, M.D.

Accepted and Approved:

_____
David D. Bennett